NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:    (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@amerisbank.com
**AMERIS BANK**
575 Anton Boulevard, Suite 1080
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

## THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>INDUSTRIAL PAINTING AND RIGGING INC, an Ohio corporation; GEORGE KAFANTARIS, an individual,<br><br>Defendants. | Case No. 8:25-cv-01138-FLA(KSx)<br><br>[Assigned to the Hon. Fernando L. Aenlle-Rocha]<br><br>**BALBOA CAPITAL CORPORATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**<br><br>Complaint Filed:    May 27, 2025<br>Trial Date:              None |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6B of the First Street Courthouse, located at 350 W. First Street, Los Angeles, CA 90012, the Honorable Fernando L. Aenlle-Rocha presiding, plaintiff Ameris Bank, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendants Industrial Painting and Rigging Inc, an Ohio corporation ("Industrial Painting") and George Kafantaris, an individual ("Kafantaris") (collectively with Industrial Painting, "Defendants"), for a judgment amount of **$192,968.13**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendants in the total amount of $192,968.13, as Balboa has established (a) a sum certain due and owing by Defendants to Balboa pursuant to the Equipment Financing Agreements No. 1, No. 2, and No. 3 entered into by Defendants and Balboa; (b) that Defendants are not in military service and are neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//

1

1    PLEASE TAKE FURTHER NOTICE that this motion is based on this

2  Notice of Motion, the supporting Memorandum of Points and Authorities, the

3  supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached

4  thereto, the pleadings and papers filed in this action, and upon such further briefing,

5  authorities, and argument submitted to the Court prior to, or during, the hearing on

6  this matter.

7

8  DATED: August 29, 2025                    SALISIAN | LEE LLP

9

10                                          By: _____

11                                              Jared T. Densen
                                                Neal S. Salisian
12                                              Patty W. Chen

13
                                            Attorneys for Plaintiff
14                                          AMERIS BANK d/b/a BALBOA CAPITAL
                                            CORPORATION
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELEVANT FACTS ....................................................1

    a.    Equipment Financing Agreement No. 1. ...............................................1

    b.    Equipment Financing Agreement No. 2. ...............................................2

    c.    Equipment Financing Agreement No. 3 ................................................3

    d.    Attorneys' Fees and Costs ....................................................................4

    e.    Default Judgment Motion ....................................................................5

II.    LEGAL ARGUMENT ...........................................................................................6

    A.    Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied ...............................................................7

    B.    Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled ...............................................................9

    C.    The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants. ...............................................12

    D.    There Are No Material Facts That Are Reasonably In Dispute. .........14

    E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.......17

    F.    Policy Concerns Favor Default Judgment In This Matter. .................18

    G.    Plaintiff Has Proven Its Damages. ....................................................19

III.    CONCLUSION ....................................................................................................22

# TABLE OF AUTHORITIES

**CASES**

*Acoustics, Inc. v. Trepte Constr. Co.*,
   14 Cal.App.3d 887, 916 (1971)........................................................................9

*Draper v. Coombs*,
   792 F.2d 915, 924 (9th Cir. 1986)................................................................17

*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
   710 F.2d 170, 176 (4th Cir. 1983)................................................................17

*Eitel v. McCool*,
   782 F.2d 1470, 1471-72 (9th Cir. 1986). ...................6, 7, 9, 12, 14, 17

*Geddes v. United Fin. Group*,
   559 F.2d 557, 560 (9th Cir. 1977)............................................................9, 14

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
   725 F.Supp.2d 916, 921 (C.D. Cal. 2010) ....................................................14

*McKnight v. Webster*,
   499 F.Supp. 420, 424 (E.D. PA 1980) .........................................................17

*NewGen, LLC v. Safe Cig, LLC*,
   804 F.3d 606, 616 (9th Cir. 2016)...........................................................17, 18

*O'Connor v. State of Nevada*,
   27 F.3d 357, 364 (9th Cir. 1994).................................................................17

*Pena v. Seguros La Comercia, S.A.*,
   770 F.2d 811, 814 (9th Cir. 1985)................................................................18

*Penpower Tech, Ltd. v. S.P.C. Tech.*,
   627 F. Supp. 2d 1083 (N.D. Cal. 2008) ...............................................12, 14, 19

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ........................................7, 8, 9

*Reichert v. Gen. Ins. Co.*,
   68 Cal.2d 822, 830 (1968).............................................................................9

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
   194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ..................................................17

2

*Walters v. Statewide Concrete Barrier, Inc.*,
  No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006).........12

**STATUTES**

Code of Civil Procedure § 1620 ...................................................................9

Code of Civil Procedure § 3300 ...................................................................9

Fed. R. Civ. P. 55.......................................................................................6

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2).......................................................9

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01138-FLA(KSx)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against defendants Industrial Painting and Rigging Inc, an Ohio corporation ("Industrial Painting") and George Kafantaris, an individual ("Kafantaris") (collectively with Industrial Painting, "Defendants").

### a.    Equipment Financing Agreement No. 1.

This action involves a claim for damages by Balboa against both Defendants for breach of the written Equipment Financing Agreement No. 364684-004 ("EFA No. 1"), and breach of the corresponding personal guaranty of that agreement.  [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 1 on or about February 28, 2023.  [*See id*.] Under the terms of EFA No. 1, Balboa loaned to Industrial Painting the sum of $37,427.18, in order to finance equipment for its business ("Collateral No. 1"). [*See id*.]

Concurrent with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 1 ("Guaranty No. 1").  [*See id*., ¶4, Exh. B.] Balboa relied on Guaranty No. 1 to finance Collateral No. 1 for Industrial Painting's business.  [*See id*.]

Under EFA No. 1, Industrial Painting was required to make three (3) monthly payments of $0.00 and fifty-seven (57) monthly payments of $886.52, beginning on March 29, 2023.  [*See id*., ¶5, Exh. A.]  On or about March 27, 2024, Balboa and Industrial Painting amended EFA No. 1 which changed the original loan amount to $23,250.13, and the monthly payments to $550.71, beginning March 29, 2024.

[*See* Ngo Decl., ¶5.]  The last payment received by Balboa was credited toward the payment due for February 28, 2025.  [*See id*., Exh. C.]  Therefore, on March 29, 2025, Industrial Painting breached EFA No. 1, and Kafantaris breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default there remained thirty-six (36) monthly payments for a total of $19,825.56, due to Balboa.  [*See id*., ¶6, Exh. C.]  Thus, **$19,825.56** remains owed to Balboa.  [*See id*.]  Defendants have since failed to make further payments.  [*See id*.]

In addition, based on the amount due of $19,825.56, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from March 29, 2025, the date of breach, to September 26, 2025, the date noticed for the hearing of this Motion for Default Judgment ("Default Motion"), for a total interest amount of **$988.26**, accruing at a rate of **$5.43 per day**, until the entry of judgment. [*See id*., ¶7; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

**b.    Equipment Financing Agreement No. 2.**

This action also involves a claim for damages by Balboa against both Defendants for breach of the written Equipment Financing Agreement No. 364684-005 ("EFA No. 2"), and breach of the corresponding personal guaranty of that agreement.  [*See* Ngo Decl., ¶9, Exh. D.]

Specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 2 on or about March 21, 2023.  [*See id*.]  Under the terms of EFA No. 2, Balboa loaned to Industrial Painting the sum of $171,626.82, in order to finance equipment for its business ("Collateral No. 2"). [*See id*.]

Concurrent with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing

to Balboa under the terms of the EFA No. 2 ("Guaranty No. 2"). [*See* Ngo Decl., ¶10, Exh. E.] Balboa relied on Guaranty No. 2 to agree to finance Collateral No. 2 for Industrial Painting's business. [*See id.*]

Under EFA No. 2, Industrial Painting was required to make forty-eight (48) monthly payments of $4,724.47, beginning on April 20, 2023. [*See id.*, ¶11, Exh. D.] The last payment received by Balboa was credited toward the payment due for February 20, 2025. [*See id.*, Exh. F.] Therefore, on March 20, 2025, Industrial Painting breached EFA No. 2, and Kafantaris breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendants' default there remained twenty-six (26) monthly payments for a total of $122,836.23, due to Balboa. [*See id.*, ¶12, Exh. F.] Thus, **$122,836.23** remains owed to Balboa. [*See id.*] Defendants have since failed to make further payments. [*See id.*]

In addition, based on the amount due of $122,836.23, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 8, 2023, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, for a total interest amount of **$6,423.33**, accruing at a rate of **$33.63 per day**, until the entry of judgment. [*See id.*, ¶13; *see also* Densen Decl., ¶¶8-9.]

### c.     Equipment Financing Agreement No. 3

This action also involves a claim for damages by Balboa against both Defendants for breach of the written Equipment Financing Agreement No. 364648-006 ("EFA No. 3"), and breach of the corresponding personal guaranty of that agreement. [*See* Ngo Decl., ¶15, Exh. G.]

Specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 3 on or about March 31, 2023. [*See id.*] Under the terms of EFA No. 3, Balboa loaned to Industrial Painting the sum of

$39,184.60, in order to finance equipment for its business ("Collateral No. 3"). [*See* Ngo Decl., ¶15.]

Concurrent with the execution of EFA No. 3, and in order to induce Balboa to enter into EFA No. 3 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA No. 3 ("Guaranty No. 3"). [*See id.*, ¶16, Exh. H.] Balboa relied on Guaranty No. 3 to agree to finance Collateral No. 3 for Industrial Painting's business. [*See id.*]

Under EFA No. 3, Industrial Painting was required to make forty-eight (48) monthly payments of $1,079.08, beginning on May 5, 2023. [*See id.*, ¶17, Exh. G.] The last payment received by Balboa was credited toward the payment due for March 5, 2025. [*See id.*, Exh. I.] Therefore, on April 5, 2025, Industrial Painting breached EFA No. 3, and Kafantaris breached Guaranty No. 3, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendants' default there remained twenty-six (26) monthly payments, for a total of $28,056.08, due to Balboa. [*See id.*, ¶18.] Thus, **$28,056.08** remains owed to Balboa. [*See id.*] Defendants have since failed to make further payments. [*See id.*]

In addition, based on the amount due of $28,056.08, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 9, 2023, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, for a total interest amount of **$1,344.00**, accruing at a rate of **$7.68 per day**, until the entry of judgment. [*See id.*, ¶19; *see also* Densen Decl., ¶¶11-12.]

### d.    Attorneys' Fees and Costs

Pursuant to Paragraph 18 of EFA No. 1, EFA No. 2, and EFA No. 3 (the "EFAs"), Balboa is entitled to recover its attorneys' fees and costs from

4

Defendants.  [*See* Densen Decl., ¶¶7, 10, 13, <u>Exh. K</u>.]  The amount of reasonable

attorneys' fees is fixed by Local Rule 55-3, in the sum of **$1,789.53** for EFA No. 1,

**$6,056.72** for EFA No. 2, and **$1,961.12** for EFA No. 3.  [*See id*.]  Balboa has

indeed incurred **$3,687.30**, in recoverable costs - $405 for filing of the Complaint,

$1,641.15 for service upon Industrial Painting, and $1,641.15 for service upon

Kafantaris.  [*See id*.]

### e.    Default Judgment Motion

Balboa's Default Motion satisfies the procedural requirements of Local Rule

55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its

Complaint and case-initiating documents on May 27, 2025.  [*See* Dkts. 1-4.]

Defendants Industrial Painting and Kafantaris were properly served on June 18,

2025, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkts. 11-12.]  On July

10, 2025, Balboa filed its Request for Clerk to Enter Default against defendants

Kafantaris and Industrial Painting ("Default Entry Requests"), and the Clerk

entered the defaults against each of the defendants on July 11, 2025.  [*See* Dkts. 13-

14.]

Defendant Industrial Painting is an Ohio corporation, and is not a minor,

incompetent person, or a person in military service or otherwise exempted from

default judgment under the Servicemembers Civil Relief Act of 1940 (the

"SCRA").  [*See* Densen Decl., ¶4.]  Further, defendant Kafantaris is not a minor, an

incompetent person, or a person in military service or otherwise exempted from

default judgment under the SCRA.  [*See id*., <u>Exh. J</u>.]

Moreover, this Court has subject matter jurisdiction over the instant action.

The amount in controversy, as alleged in the Complaint and as set forth herein,

exceeds $75,000.  [*See* Dkt. 1.]  Plaintiff Balboa was and still operates as a

California corporation, with its principal place of business in Orange County,

California.  [*See* Dkt. 1, ¶1; *see also* Densen Decl., ¶14.]  Balboa is also now a

wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris

Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank. [*See* Densen Decl., ¶14.]

Defendant Industrial Painting is an Ohio corporation, incorporated in Ohio, with its principal place of business in Ohio. [*See id*., ¶15, Exh. L.] Thus, Industrial Painting is a citizen of the State of Ohio. [*See id*.] Based upon research, and information and belief, including the Driver's License Kafantaris submitted to Balboa, Kafantaris is domiciled at Columbia Station, Ohio 44028. [*See id*.] As such, there exists complete diversity amongst the parties. [*See id*., ¶16.]

As set forth below, a default judgment should be entered against each of the Defendants since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendants in the amount of **$192,968.13**.

## II.    LEGAL ARGUMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on May 27, 2025. [*See* Dkts. 1-4.] Defendants Industrial Painting and Kafantaris were properly served on June 18, 2025, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkts. 11-12.] On July 10, 2025, Balboa filed its Default Entry Requests, and the Clerk entered the defaults against each of the defendants on July 11, 2025. [*See* Dkts. 13-14.]

Defendant Industrial Painting is an Ohio corporation, and is not a minor, incompetent person, or a person in military service or otherwise exempted from

default judgment under the SCRA.  [*See* Densen Decl., ¶4.]  Further, defendant Kafantaris is not a minor, an incompetent person, or a person in military service or otherwise exempted from default judgment under the SCRA.  [*See id*., Exh. J.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment.  *See id*.

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

## A.    Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied.

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendants' deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to EFA No. 1, financed Collateral No. 1 for Defendants, with Defendants agreeing to make three (3) monthly payments of $0.00 and fifty-seven (57) monthly payments of $886.52, with the Balboa and Defendant amending EFA No. 1 changing the fifty-seven (57) monthly payments to $550.71, for which thirty-six (36) monthly payments for a total of $19,825.56, still remained due to Balboa at the time of Defendants' default.  [*See* Ngo Decl., ¶¶5-6,

7

Exhs. A, C.]  Thus, **$19,825.56** remains owed to Balboa.  [*See* Ngo Decl., ¶6, Exh. C.]  Defendants have since failed to make further payments.  [*See id.*, ¶7.]

Additionally, Balboa, pursuant to EFA No. 2, financed Collateral No. 2 for Defendants, with Defendants agreeing to make forty-eight (48) monthly payments of $4,724.47, for which twenty-six (26) monthly payments, for a total of $122,836.23, still remained due to Balboa at the time of Defendants' default.  [*See id.*, ¶¶11-12, Exhs. D, F.]  Thus, **$122,836.23** remains owed to Balboa.  [*See id.*, ¶12, Exh. F.]  Defendants have since failed to make further payments.  [*See id.*]

Additionally, Balboa, pursuant to EFA No. 3, financed Collateral No. 3 for Defendants, with Defendants agreeing to make forty-eight (48) monthly payments of $1,079.08, for which twenty-six (26) monthly payments, for a total of $28,056.08, still remained due to Balboa at the time of Defendants' default.  [*See id.*, ¶¶17-18, Exhs. G, I.]  Thus, **$28,056.08** remains owed to Balboa.  [*See id.*, ¶18.]  Defendants have since failed to make further payments.  [*See id.*]

Balboa has made demands for its monies from Defendants and under the Guaranty, all of which Defendants have failed to pay back.  [*See id.*, ¶¶8, 14, 20.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendants have been unwilling to participate in, or otherwise acknowledge, the litigation.  Balboa's Motion for Default Judgment is its final option for an attempt at recovery, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims. *See PepsiCo*, 238 F. Supp. 2d at 1177.

Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendants will obtain a significant windfall of over $192,968.13.  Not only will the deliberate nonaction by Defendants and their continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced, especially with no other available recourse, should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendants to be granted by this Court.

**B.      Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together. *See PepsiCo*, 238 F. Supp. 2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract. *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met. Specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 1, under which Balboa loaned to Industrial Painting the sum of $37,427.18, in order to finance Collateral No. 1 for its business. [*See* Ngo Decl., ¶3, Exh. A.]

Concurrent with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payments of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 1 via Guaranty No. 1. [*See id*., ¶4, Exh. B.] Balboa relied on Guaranty No. 1 to agree to finance Collateral No. 1 for Industrial Painting's business. [*See id*.]

Under EFA No. 1, Industrial Painting was required to make three (3) monthly payments of $0.00 and fifty-seven (57) monthly payments of $886.52, beginning on

9

March 29, 2023.  [*See* Ngo Decl., ¶5, <u>Exh. A</u>.]  On or about March 27, 2024, Balboa and Industrial Painting amended EFA No. 1 which changed the original loan amount to $23,250.13, and the monthly payments to $550.71, beginning March 29, 2024.  [*See id*.]  The last payment received by Balboa was credited toward the payment due for February 28, 2025.  [*See id*., <u>Exh. C</u>.]  Therefore, on March 29, 2025, Industrial Painting breached EFA No. 1, and Kafantaris breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default there remained thirty-six (36) monthly payments, for a total of $19,825.56, due to Balboa.  [*See id*., ¶6, <u>Exh. C</u>.]  Thus, **$19,825.56** remains owed to Balboa.  [*See id*.]  Defendants have since failed to make further payments.  [*See id*.]

Additionally, as to EFA No. 2, here, all elements are equally met. Specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 2, under which Balboa loaned to Industrial Painting the sum of $171,626.82, in order to finance Collateral No. 2 for its business.  [*See id*., ¶9, <u>Exh. D</u>.]

Concurrent with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payments of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 2 via Guaranty No. 2.  [*See id*., ¶10, <u>Exh. E</u>.]  Balboa relied on Guaranty No. 2 to agree to finance Collateral No. 2 for Industrial Painting's business.  [*See id*.]

Under EFA No. 2, Industrial Painting was required to make forty-eight (48) monthly payments of $4,724.47, beginning on April 20, 2023.  [*See id*., ¶11, <u>Exh. D</u>.]  The last payment received by Balboa was credited toward the payment due for February 20, 2025.  [*See id*., <u>Exh. F</u>.]  Therefore, on March 20, 2025, Industrial Painting breached EFA No. 2, and Kafantaris breached Guaranty No. 2, by failing

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01138-FLA(KSx)

to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See* Ngo Decl., ¶11.]

At the time of Defendants' default there remained twenty-six (26) monthly payments, for a total of $122,836.23, due to Balboa.  [*See id.*, ¶12, Exh. F.]  Thus, **$122,836.23** remains owed to Balboa.  [*See id.*]  Defendants have since failed to make further payments.  [*See id.*]

Moreover, as to EFA No. 3, here, all elements are equally met.  Specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 3, under which Balboa loaned to Industrial Painting the sum of $39,184.60, in order to finance Collateral No. 3 for its business.  [*See id.*, ¶15, Exh. G.]

Concurrent with the execution of EFA No. 3, and in order to induce Balboa to enter into EFA No. 3 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payments of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 3 via Guaranty No. 3.  [*See id.*, ¶16, Exh. H.] Balboa relied on Guaranty No. 3 to agree to finance Collateral No. 3 for Industrial Painting's business.  [*See id.*]

Under EFA No. 3, Industrial Painting was required to make forty-eight (48) monthly payments of $1,079.08, beginning on May 5, 2023.  [*See id.*, ¶17, Exh. G.] The last payment received by Balboa was credited toward the payment due for March 5, 2025.  [*See id.*, Exh. I.]  Therefore, on April 5, 2025, Industrial Painting breached EFA No. 3, and Kafantaris breached Guaranty No. 3, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id.*]

At the time of Defendants' default there remained twenty-six (26) monthly payments, for a total of $28,056.08, due to Balboa.  [*See id.*, ¶18, Exh. I.]  Thus, **$28,056.08** remains owed to Balboa.  [*See id.*]  Defendants have since failed to make further payments.  [*See id.*]

There is no doubt, and it cannot be disputed that: (1) Balboa and Defendants entered into EFA No. 1, EFA No. 2, and EFA No. 3 (the "EFAs"); (2) Kafantaris personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFAs via Guaranty No. 1, No. 2, and No. 3 (the "Guaranties"); (3) Industrial Painting received the loan in order to finance Collateral No. 1, No. 2, and No. 3 (the "Collaterals") for its business; (4) Defendants ceased making payments pursuant to the EFAs; and (5) Balboa has suffered and continues to suffer damages due to Defendants' continued nonpayment under the EFAs.  Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

## C.  The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to EFA No. 1 in the amount of **$19,825.56**; prejudgment interest from March 29, 2025, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, in the amount of **$988.26**, plus **$5.43 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$1,789.53**; and costs in the amount of **$3,687.30**. [*See* Densen Decl., ¶¶5-7, Exh. K.] The damages sought are contractually-based and arise out of the clear terms and obligations of EFA No. 1; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*, ¶¶7, 10, 13.]

Additionally, Balboa seeks compensatory damages pursuant to EFA No. 2 in the amount of **$122,836.23**; prejudgment interest from March 20, 2025, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, in the amount of **$6,423.33**, plus **$33.63 per day** until the entry of judgment; and statutory attorneys' fees, in the amount of **$6,056.72**. [*See id.*, ¶¶8-10.] The damages sought are contractually-based and arise out of the clear terms and obligations of EFA No. 2; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*, ¶¶7, 10, 13.]

Furthermore, Balboa seeks compensatory damages pursuant to EFA No. 3 in the amount of **$28,056.08**; prejudgment interest from April 5, 2025, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, in the amount of **$1,344.00**, plus **$7.68 per day** until the entry of judgment; and statutory attorneys' fees, in the amount of **$1,961.12**. [*See id.*, ¶¶11-13.] The damages sought are contractually-based and arise out of the clear terms and obligations of EFA No. 3; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*, ¶¶7, 10, 13.]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, <u>and other factors</u>, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D.    <u>There Are No Material Facts That Are Reasonably In Dispute.</u>

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 1, under which Balboa loaned to Industrial Painting the sum of $37,427.18, in order to finance Collateral No. 1 for its business.  [*See* Ngo Decl., ¶3, <u>Exh. A.</u>]

Concurrent with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payments of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 1 via Guaranty No. 1.  [*See id.*, ¶4, <u>Exh. B.</u>] Balboa relied on Guaranty No. 1 to agree to finance Collateral No. 1 for Industrial Painting's business.  [*See id.*]

Under EFA No. 1, Industrial Painting was required to make three (3) monthly payments of $0.00 and fifty-seven (57) monthly payments of $886.52, beginning on March 29, 2023. [*See* Ngo Decl., ¶5, <u>Exh. A</u>.] On or about March 27, 2024, Balboa and Industrial Painting amended EFA No. 1 which changed the original loan amount to $23,250.13, and the monthly payments to $550.71, beginning March 29, 2024. [*See id*.] The last payment received by Balboa was credited toward the payment due for February 28, 2025. [*See id*., <u>Exh. C</u>.] Therefore, on March 29, 2025, Industrial Painting breached EFA No. 1, and Kafantaris breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default there remained thirty-six (36) monthly payments, for a total of $19,825.56, due to Balboa. [*See id*., ¶6, <u>Exh. C</u>.] Thus, **$19,825.56** remains owed to Balboa. [*See id*.] Defendants have since failed to make further payments. [*See id*.]

And as for EFA No. 2, here, specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 2, under which Balboa loaned to Industrial Painting the sum of $171,626.82, in order to finance Collateral No. 2 for its business. [*See* Ngo Decl., ¶9, <u>Exh. D</u>.]

Concurrent with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payments of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 2 via Guaranty No. 2. [*See id*., ¶10, <u>Exh. E</u>.] Balboa relied on Guaranty No. 2 to agree to finance Collateral No. 2 for Industrial Painting's business. [*See id*.]

Under EFA No. 2, Industrial Painting was required to make forty-eight (48) monthly payments of $4,724.47, beginning on April 20, 2023. [*See id*., ¶11, <u>Exh. D</u>.] The last payment received by Balboa was credited toward the payment due for February 20, 2025. [*See id*., <u>Exh. F</u>.] Therefore, on March 20, 2025, Industrial

Painting breached EFA No. 2, and Kafantaris breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See* Ngo Decl., ¶11.]

At the time of Defendants' default there remained twenty-six (26) monthly payments, for a total of $122,836.23, due to Balboa. [*See id*., ¶12.] Thus, **$122,836.23** remains owed to Balboa. [*See id*.] Defendants have since failed to make further payments. [*See id*.]

And as for EFA No. 3, here, specifically, Balboa, on the one hand, and Industrial Painting and Kafantaris, on the other, entered into EFA No. 3, under which Balboa loaned to Industrial Painting the sum of $39,184.60, in order to finance Collateral No. 3 for its business. [*See id*., ¶15, Exh. G.]

Concurrent with the execution of EFA No. 3, and in order to induce Balboa to enter into EFA No. 3 with Industrial Painting, Kafantaris personally guaranteed, in writing, the payments of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 3 via Guaranty No. 3. [*See id*., ¶16, Exh. H.] Balboa relied on Guaranty No. 3 to agree to finance Collateral No. 3 for Industrial Painting's business. [*See id*.]

Under EFA No. 3, Industrial Painting was required to make forty-eight (48) monthly payments of $1,079.08, beginning on May 5, 2023. [*See id*., ¶17, Exh. G.] The last payment received by Balboa was credited toward the payment due for March 5, 2025. [*See id*., Exh. I.] Therefore, on April 5, 2025, Industrial Painting breached EFA No. 3, and Kafantaris breached Guaranty No. 3, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default there remained twenty-six (26) monthly payments, for a total of $28,056.08, due to Balboa. [*See id*., ¶18, Exh. I.] Thus, **$28,056.08** remains owed to Balboa. [*See id*.] Defendants have since failed to make further payments. [*See id*.]

Defendants cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If anything, Defendants' refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect." *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F.Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

17

Here, Defendants failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect.  Defendants were properly served by personally leaving copies of the Complaint and Summons with defendant Kafantaris, individually and as the registered agent for service of process and owner of defendant Industrial Painting, at 12409 Eaton Commerce Parkway, Columbia Station, Ohio 44028.  [*See* Dkts. 11-12.]

Further, Defendants were additionally served at the same address thereafter with the Default Entry Request.  [*See* Dkt. 13.]  Defendants have not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant.  Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect.  *See NewGen*, 804 F.3d at 616.

Here, Defendants have failed to acknowledge their wrongdoings and the allegations they face, even in the slightest degree.  Instead, Defendants have blatantly ignored Balboa's Complaint and all other papers filed thereafter.  Rather, Defendants' course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

## F.    **Policy Concerns Favor Default Judgment In This Matter.**

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added).  The policy preference to decide a case on its merits is not

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01138-FLA(KSx)

dispositive, and thus, does not preclude a court from granting a default judgment. *See Penpower Tech, Ltd.*, 627 F. Supp. 2d at 1093 (defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment. As detailed in II.E., *supra*, Defendants have made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action. Defendants have deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendants' refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendants for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

## G.    Plaintiff Has Proven Its Damages.

Under EFA No. 1, Industrial Painting was required to make three (3) monthly payments of $0.00 and fifty-seven (57) monthly payments of $886.52, beginning on March 29, 2023. [*See* Ngo Decl., ¶5, Exh. A.] On or about March 27, 2024, Balboa and Industrial Painting amended EFA No. 1 which changed the original loan amount to $23,250.13, and the monthly payments to $550.71, beginning March 29, 2024. [*See id*.] The last payment received by Balboa was credited toward the payment due for February 28, 2025. [*See id*., Exh. C.] Therefore, on March 29, 2025, Industrial Painting breached EFA No. 1, and Kafantaris breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default there remained thirty-six (36) monthly payments, for a total of $19,825.56, due to Balboa. [*See id*., ¶6, Exh. C.] Thus,

19

**$19,825.56** remains owed to Balboa.  [*See* Ngo Decl., ¶6.]  Defendants have since failed to make further payments.  [*See id.*]

In addition, based on the amount due of $19,825.56, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from March 29, 2025, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, for a total interest amount of **$988.26**, accruing at a rate of **$5.43 per day**, until the entry of judgment.  [*See id.*, ¶7; *see also* Densen Decl., ¶¶5-6.]

Additionally, under EFA No. 2, Industrial Painting was required to make forty-eight (48) monthly payments of $4,724.47, beginning on April 20, 2023.  [*See* Ngo Decl., ¶11, Exh. D.]  The last payment received by Balboa was credited toward the payment due for February 20, 2025.  [*See id.*, Exh. F.]  Therefore, on March 20, 2025, Industrial Painting breached EFA No. 2, and Kafantaris breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id.*]

At the time of Defendants' default there remained twenty-six (26) monthly payments, for a total of $122,836.23, due to Balboa.  [*See id.*, ¶12, Exh. F.]  Thus, **$122,836.23** remains owed to Balboa.  [*See id.*]  Defendants have since failed to make further payments.  [*See id.*]

In addition, based on the amount due of $122,836.23, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from March 20, 2025, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, for a total interest amount of **$6,423.33**, accruing at a rate of **$33.63 per day**, until the entry of judgment.  [*See id.*, ¶13; *see also* Densen Decl., ¶¶8-9.]

Additionally, under EFA No. 3, Industrial Painting was required to make forty-eight (48) monthly payments of $1,079.08, beginning on May 5, 2023.  [*See* Ngo Decl., ¶17, Exh. G.]  The last payment received by Balboa was credited toward

the payment due for March 5, 2025. [*See* Ngo Decl., ¶17, <u>Exh. I</u>.] Therefore, on April 5, 2025, Industrial Painting breached EFA No. 3, and Kafantaris breached Guaranty No. 3, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default there remained twenty-six (26) monthly payments, for a total of $28,056.08, due to Balboa. [*See id*., ¶18, <u>Exh. I</u>.] Thus, **$28,056.08** remains owed to Balboa. [*See id*.] Defendants have since failed to make further payments. [*See id*.]

In addition, based on the amount due of $28,056.08, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from April 5, 2025, the date of breach, to September 26, 2025, the date noticed for the hearing of this Default Motion, for a total interest amount of **$1,344.00**, accruing at a rate of **$7.68 per day**, until the entry of judgment. [*See id*., ¶19; *see also* Densen Decl., ¶¶11-12.]

Pursuant to Paragraph 18 of the EFAs, Balboa is entitled to recover its attorneys' fees and costs from Defendants. [*See* Densen Decl., ¶¶7, 10, 13, <u>Exh. K</u>.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$1,789.53** for EFA No. 1, **$6,056.72** for EFA No. 2, and **$1,961.12** for EFA No. 3. [*See id*.] Balboa has indeed incurred **$3,687.30**, in recoverable costs - $405 for filing of the Complaint, $1,641.15 for service upon Industrial Painting, and $1,641.15 for service upon Kafantaris. [*See id*.]

Altogether, this totals out to **<u>$192,968.13</u>** (as of September 26, 2025), calculated as follows:

//

//

//

//

//

21

<u>**EFA No. 1:**</u>

- Amount owed:          $ 19,825.56
- Prejudgment Interest:     $    988.26
- Attorneys' Fees:        $  1,789.53

<u>**EFA No. 2:**</u>

- Amount owed:          $122,836.23
- Prejudgment Interest:     $  6,423.33
- Attorneys' Fees:        $  6,056.72

<u>**EFA No. 3:**</u>

- Amount owed:          $ 28,056.08
- Prejudgment Interest:     $  1,344.00
- Attorneys' Fees:        $  1,961.12

<u>**Costs:**</u>

- Recoverable Costs:      $  3,687.30
- Total:              **$192,968.13**

## III.   **CONCLUSION**

Based on Balboa's Complaint, Default Judgment Motion, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Motion against Defendants, in the total amount of **$192,968.13**.

DATE: August 29, 2025       SALISIAN | LEE LLP

By: _____
    Jared T. Densen
    Neal S. Salisian
    Patty W. Chen

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION